FILED BY _____ D.C.

MAR 07 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. __19-80030-CR-DIMITROULEAS/MATTHEWMAN__

18 U.S.C. § 371
21 U.S.C. §§ 331(d), 355(a), 333(a)(2)
21 U.S.C. § 846
21 U.S.C. § 841
18 U.S.C. § 1957
18 U.S.C. §§ 981, 982
21 U.S.C. § 853

**UNITED STATES OF AMERICA**

**vs.**

**PHILLIP BRAUN,**
    **a/k/a "PJ,"**
**AARON SINGERMAN,**
**ROBERT DIMAGGIO,**
**ANTHONY VENTRELLA,**
    **a/k/a "Joey,"**
**JAMES BOCCUZZI,**
**DAVID WINSAUER,**
**BLACKSTONE LABS, LLC, and**
**VENTECH LABS, LLC,**

        **Defendants.**
                         /

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### Food, Drugs, and Dietary Supplements Under the Food, Drug, and Cosmetic Act

1.    The Food and Drug Administration (FDA) was the agency of the United States

responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and

Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.* FDA's primary purpose in enforcing the FDCA was to protect the health and safety of consumers in the United States. FDA's responsibilities included regulating the manufacturing, labeling, and distribution of food and drugs shipped or received in interstate commerce. FDA's responsibilities included preventing improperly packaged or labeled food and drugs not approved for sale from reaching consumers.

2.      It was unlawful under the FDCA to distribute in interstate commerce any new drug that had not been approved by the FDA.

3.      Purchasers of food and dietary supplements outside the United States often required sellers to certify that products were legal in the United States. Any person who exported a food, including a dietary supplement, from the United States could request that FDA certify in writing that the product meets certain requirements of the FDCA. The certification was known as a "Certificate of Free Sale."

### Prohormones, SARMs and Other Compounds

4.      Designer steroids were synthetic steroid compounds derived by simple chemical modification from another steroid, usually an anabolic steroid. Some designer steroids were referred to as "prohormones."

5.      Dimethazine, methylstenbolone and methyl-1-etiocholenolol were synthetic steroids and were often referred to as "prohormones." They were not dietary ingredients that could be used in dietary supplements.

6.      Selective Androgen Receptor Modulators (SARMs) were chemical substances about which there were serious safety concerns, including that they increased the risk of heart attack, stroke, and liver damage.

2

7.      Ostarine was a SARM and had been authorized by FDA to be investigated as a new drug.  Since in or around 2008, clinical research studies of ostarine have been conducted and publicized.

8.      "Nootropic" substances were chemical substances marketed to be consumed as mind-altering or cognition-enhancing products.

9.      Picamilon, also known as "pikatropin," was a synthetic chemical compound. Picamilon has been marketed as a nootropic compound and sold as an antidepressant.  Picamilon was not a dietary ingredient.

## Corporate Defendants

10.     Defendant **BLACKSTONE LABS, LLC (BLACKSTONE)** was a limited liability company that was incorporated under the laws of the State of Florida on or about August 29, 2012.  **BLACKSTONE** was located in Palm Beach County, Florida, and engaged in the sale and distribution of products that they claimed were dietary supplements.

11.     Defendant **VENTECH LABS, LLC (VENTECH)** was a limited liability company that was established under the laws of the State of Florida on or about June 13, 2016. **VENTECH** was located in Palm Beach County, Florida.  **VENTECH** manufactured and sold products that it claimed were dietary supplements to consumers throughout the United States.   **VENTECH** also manufactured products for **BLACKSTONE.**

## Individual Defendants

12.     Defendant **PHILLIP BRAUN, a/k/a "PJ,"** resided in Palm Beach County, Florida. **BRAUN** co-founded **BLACKSTONE** and was president until May 2016, when he also became **BLACKSTONE's** chief executive officer.  **BRAUN** was an owner of **BLACKSTONE.**

13.     Defendant **AARON SINGERMAN** resided in Palm Beach County, Florida. **SINGERMAN** co-founded **BLACKSTONE** and was chief executive officer until May 2016. He was an owner of the company until in or around January 2018.

14.     Defendant **ROBERT DIMAGGIO** resided in Henderson, Nevada. **DIMAGGIO** co-founded **BLACKSTONE** with **PHILLIP BRAUN** and **AARON SINGERMAN**.

15.     Defendant **ANTHONY VENTRELLA, a/k/a "Joey,"** resided in St. Francisville, Louisiana, and Palm Beach County, Florida. **VENTRELLA** was an owner and chief executive officer of **VENTECH**.

16.     Defendant **JAMES BOCCUZZI** resided in the State of Connecticut and in Broward and Palm Beach Counties, Florida. **BOCCUZZI** was **BLACKSTONE's** lead salesman and managed wholesale sales.

17.     Defendant **DAVID WINSAUER** resided in Palm Beach County, Florida. **WINSAUER** worked as **BLACKSTONE's** vice president, and managed the company's marketing, its website, and its direct-to-consumer sales.

### Unindicted Co-Conspirators

18.     Unindicted Co-conspirator 1 was an owner and manager of Fight Pharm, LLC, a supplement manufacturing company in Palm Beach County, Florida, and an owner and manager of a business in the State of Georgia that manufactured products for **BLACKSTONE**.

19.     Unindicted Co-conspirator 2 was an owner and manager of **VENTECH** and along with **ANTHONY VENTRELLA** controlled the company's important activities. Unindicted Co-Conspirator 2 also assisted **VENTRELLA** in running the day-to-day operations of Fight Pharm, LLC and VBS Laboratories, LLC, another supplement manufacturing company in Palm Beach County, Florida.

4

20.    Unindicted Co-conspirator 3 was the owner and chief executive of a supplement retailer in Batesville, Arkansas, who repeatedly purchased products from **BLACKSTONE**.

21.    Unindicted Co-conspirator 4 worked as **BLACKSTONE's** manager of inventory and shipping, and later as its chief operations officer.

<u>**Defendants' Business Practices**</u>

22.    Beginning on or about July 2, 2013, **ROBERT DIMAGGIO**, an associate of **PHILLIP BRAUN** and **AARON SINGERMAN**, helped start **BLACKSTONE** and became a manager of the company. As a result of his work with **BRAUN** and **SINGERMAN**, **DIMAGGIO** received monthly payments of $6,000 from **BLACKSTONE** until in or around September 2017.

23.    Until in or around April 2016, **PHILLIP BRAUN** and **AARON SINGERMAN** jointly owned and controlled **BLACKSTONE**. In or around April 2016, disputes arose between **BRAUN** and **SINGERMAN** and led to **SINGERMAN's** departure from on-site, day-to-day operation and control of **BLACKSTONE**. **SINGERMAN** remained a part-owner of **BLACKSTONE** and continued to receive a portion of its profits until in or around January 2018. After **SINGERMAN's** departure from on-site participation and control, **BRAUN** became the dominant owner, controlling **BLACKSTONE's** important activities, including its day-to-day operations and finances.

24.    **AARON SINGERMAN, PHILLIP BRAUN**, and Unindicted Co-conspirator 1 established Fight Pharm, LLC (Fight Pharm) as a limited liability company under the laws of the State of Florida on or about April 16, 2014. Fight Pharm manufactured and sold drugs purportedly marketed as dietary supplements to customers throughout the United States.

25.     **AARON SINGERMAN** and **PHILLIP BRAUN** established Fight Pharm so that they could shift the sale of drugs and other products from **BLACKSTONE** to Fight Pharm and to hide such sales from FDA.

26.     **AARON SINGERMAN** and **PHILLIP BRAUN** directed **ANTHONY VENTRELLA** to be the nominal owner and chief executive officer of Fight Pharm. **VENTRELLA** and Unindicted Co-conspirator 2 ran the day-to-day operations of the company. **SINGERMAN** and **BRAUN** had signature authority over Fight Pharm's bank accounts and received the company's profits.  One of Fight Pharm's largest customers was **BLACKSTONE**. Fight Pharm became largely inactive by 2016 and was dissolved under Florida law on or about August 17, 2017.

27.     **AARON SINGERMAN, PHILLIP BRAUN**, and **ANTHONY VENTRELLA** established VBS Laboratories, LLC (VBS) as a limited liability company under the laws of the State of Florida on or around November 6, 2015.  VBS, which operated in Palm Beach County, Florida, manufactured and sold drugs throughout the United States purportedly marketed as dietary supplements.

28.     **AARON SINGERMAN** and **PHILLIP BRAUN** established VBS as a successor to Fight Pharm operating at the same location as Fight Pharm and acquiring Fight Pharm's manufacturing equipment.  VBS became active in 2016, after Fight Pharm became inactive. **ANTHONY VENTRELLA** was a co-owner of VBS with **SINGERMAN** and **BRAUN**. **VENTRELLA** and Unindicted Co-conspirator 2 ran VBS's day-to-day operations. **BLACKSTONE** was one of VBS's largest customers.  **SINGERMAN** and **BRAUN** received profits from VBS. VBS was dissolved under Florida law on or about August 17, 2017.

29.    **VENTECH** was a successor to VBS, operating at VBS's Palm Beach County location and acquiring its manufacturing equipment.

## COUNT 1
### Conspiracy
### (18 U.S.C. § 371)

1.    The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.    From on or about August 28, 2012, through in or around August 2018, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**PHILLIP BRAUN, a/k/a "PJ,"**
**AARON SINGERMAN,**
**ROBERT DIMAGGIO,**
**ANTHONY VENTRELLA,**
**a/k/a "Joey,"**
**JAMES BOCCUZZI,**
**DAVID WINSAUER,**
**BLACKSTONE LABS, LLC, and**
**VENTECH LABS, LLC,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful functions of the United States Food and Drug Administration, an agency of the United States Department of Health and Human Services, in the United States Food and Drug Administration's oversight and regulation of food, drugs, and dietary supplements, in violation of Title 18, United States Code, Section 371, and to commit offenses against the United States, that is:

a.    to knowingly and with intent to  defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and

7

fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly cause to be delivered certain mail matter by the United States Postal Service and any private and commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341; and

   b. to knowingly and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that such pretenses, representations and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

   3. It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (1) using materially false and misleading statements to distribute products they claimed to be legal dietary supplements, but were in fact illegal to distribute and in some cases hazardous to consumers; and (2) distributing these illegal products without detection and regulatory oversight by the FDA.

### Manner and Means

   The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

   4. **PHILLIP BRAUN, AARON SINGERMAN,** and **ROBERT DIMAGGIO** established and incorporated **BLACKSTONE**. **BRAUN** and **SINGERMAN** falsely marketed the

8

company's products as cutting-edge dietary supplements, designed to safely promote muscle growth and strength, and enhance physical and mental performance.

5. **PHILLIP BRAUN** and **AARON SINGERMAN** used **BLACKSTONE** to advertise illegal products on the internet and through email and social media, falsely telling customers that the company's products were legal and were dietary supplements.

6. **ANTHONY VENTRELLA,** Unindicted Co-conspirator 1 and Unindicted Co-conspirator 2 ordered illegal and unsafe ingredients from China imported into the United States with false and fraudulent documentation, hiding the true contents from FDA and other departments and agencies of the United States Government.

7. **PHILLIP BRAUN** and **AARON SINGERMAN** caused **BLACKSTONE** to evade FDA's regulatory authority and disregard requirements of the FDCA. Among other things, **BLACKSTONE** disregarded complaints from consumers who reported getting ill or injured from **BLACKSTONE's** products. **BLACKSTONE** failed to notify the FDA of such complaints, even when required by law.

8. **PHILLIP BRAUN** and **AARON SINGERMAN** caused **BLACKSTONE's** advertisements to falsely claim: "All our products are manufactured in an FDA approved, registered and inspected facility that maintains GMP [Good Manufacturing Practices] certifications and follows all FDA guidelines." Moreover, **BLACKSTONE**'s advertisements falsely stated that: "Our pro-anabolic compounds are all third party independently lab tested before encapsulation."

9. To shield themselves and **BLACKSTONE** from detection and scrutiny by FDA, **PHILLIP BRAUN** and **AARON SINGERMAN** established Fight Pharm and installed **ANTHONY VENTRELLA** as the company's public face. **BRAUN** and **SINGERMAN**

9

transferred the distribution of various products from **BLACKSTONE** to Fight Pharm. Nevertheless, **BRAUN** and **SINGERMAN** maintained control of Fight Pharm, reaping its profits.

10.     To further conceal unlawful conduct, **PHILLIP BRAUN, AARON SINGERMAN, JAMES BOCCUZZI,** and **DAVID WINSAUER** created, and caused the creation of, fraudulent documents and records, and lied to customers.

11.     Conspirators distributed hundreds of thousands of bottles of illegal products nationwide and outside the United States, including the following products:

     a.     designer steroids such as "Super DMZ RX 2.0," which contained dimethazine and methylstenbolone, and "Alpha-1 Max," which contained methyl-1-etiocholenolol;

     b.     SARMs, such as "Ostapure," "Ostapro" and "PCT IV," all of which contained ostarine;

     c.     stimulants, such as "Angel Dust," which contained 4-amino-2-methylpentane citrate, also known as "AMP Citrate;"

     d.     nootropics, such as "Euphoria RX," which contained picamilon; and

     e.     other products that violated the FDCA.

12.     To minimize public disclosures and FDA scrutiny concerning the sale of illegal products, **PHILLIP BRAUN, AARON SINGERMAN,** and **ANTHONY VENTRELLA** confidentially settled lawsuits, falsely promising to stop selling products that violated the FDCA. Nevertheless, **BRAUN, SINGERMAN, VENTRELLA, BLACKSTONE,** and Fight Pharm continued distributing illegal products through **BLACKSTONE**, Fight Pharm, and other entities.

13.     **PHILLIP BRAUN, AARON SINGERMAN, ANTHONY VENTRELLA** and their co-conspirators used the proceeds of the conspiracy for their own use, the use of others, and to further the conspiracy.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.     On or about August 28, 2012, **PHILLIP BRAUN, AARON SINGERMAN,** and **ROBERT DIMAGGIO** conferred by telephone and Skype and decided **BLACKSTONE** would register as a limited liability company and sell a product known as Super DMZ RX 2.0.

2.     On or about August 29, 2012, **PHILLIP BRAUN, AARON SINGERMAN**, and **ROBERT DIMAGGIO** caused **BLACKSTONE** to be in incorporated under the laws of Florida as a limited liability company.

3.     In or around August 2012, **BLACKSTONE, PHILLIP BRAUN, ROBERT DIMAGGIO**, and **AARON SINGERMAN** marketed and sold prohormones through the website, www.superdmz.com.

4.     In or around August 2012, **PHILLIP BRAUN, AARON SINGERMAN** and **ROBERT DIMAGGIO** used the website www.superdmz.com to sell Super DMZ Rx 2.0, falsely claiming that the product was a dietary supplement, and that the product was "100% legal!"

5.     On or about March 13, 2014, **ROBERT DIMAGGIO**, in an email to **AARON SINGERMAN** about FDA enforcement announcements concerning the designer steroid products Methadrol and Super DMZ RX 2.0, told **SINGERMAN** that "[o]nce you get an FDA letter I would

11

move all of the MDE and SDMZ that is left to a different location (in case they show up), and remove them from the website, and sell it to the retailers only [un]til its [sic] gone."

6.      On or about April 16, 2014, **AARON SINGERMAN, PHILLIP BRAUN, ANTHONY VENTRELLA**, and Unindicted Co-conspirator 2 caused Fight Pharm to be incorporated under the laws of Florida as a limited liability company.

7.      On or about April 18, 2014, **AARON SINGERMAN** and **ANTHONY VENTRELLA** signed a signature card for a Fight Pharm business checking account ending in 1697.

8.      On or about August 1, 2014, **BLACKSTONE, PHILLIP BRAUN** and **AARON SINGERMAN** caused a shipment of Super DMZ RX 2.0 to be sent from Palm Beach County, Florida to Unindicted Co-conspirator 3 in Arkansas.

9.      On or around September 17, 2014, **AARON SINGERMAN** provided **ANTHONY VENTRELLA** a draft message to be emailed to a Chinese supplier concerning the purchase of raw ingredients for Super DMZ RX 2.0.

10.     On or about September 26, 2014, **BLACKSTONE, PHILLIP BRAUN** and **AARON SINGERMAN** caused a shipment of Super DMZ RX 2.0 to be sent from Palm Beach County, Florida to Unindicted Co-conspirator 3 in Arkansas.

11.     On or about March 19, 2015, a **BLACKSTONE** employee forwarded to **AARON SINGERMAN** a customer's email seeking help because **BLACKSTONE's** product Angel Dust caused her stomach pain and vomiting that required emergency medical attention.

12.     On or about April 25, 2015, after **BLACKSTONE** received a Warning Letter from FDA stating that its Angel Dust product was illegal, **PHILLIP BRAUN** and **AARON**

**SINGERMAN** directed **BLACKSTONE** employees to sell all remaining **BLACKSTONE** Angel Dust as soon as possible.

13.     On or about May 19, 2015, **BLACKSTONE**, through an attorney, wrote to FDA concerning the Warning Letter FDA issued regarding Angel Dust and stated **BLACKSTONE** "has made the business decision to immediately cease the distribution and sale of its product, Angel Dust."

14.     On or about May 20, 2015, an associate of **PHILLIP BRAUN** and **AARON SINGERMAN** forwarded them an email from an online marketplace, which advised that the **BLACKSTONE** product named "Ostapure" had been removed from the online marketplace's product catalog because the product "has been identified as a prescription drug, a product imitating a prescription drug, an unapproved foreign drug or supplement, an unapproved new drug, or a controlled substance."

15.     On or about June 11, 2015, in response to a wholesale customer's email which said that **BLACKSTONE's** SARM products, including ostarine, were "pretty fucking illegal," **JAMES BOCCUZZI**, emailed and wrote, "Thanks for the info!"

16.     On or about June 24, 2015, **AARON SINGERMAN**, in an email to **DAVID WINSAUER** and **PHILLIP BRAUN**, said, "We didn't want any SARMS advertised in Mags . . . Our OSTAPURE ad in MD [Muscular Development magazine] may cause some problems now. Please never do that again.  You had 1/3 page for OSTAPURE in the most recent one and now someone who saw it might report us to FDA."

17.     On or about July 1, 2015, **ANTHONY VENTRELLA**, in a text message, told a **BLACKSTONE** employee that their raw ingredients were ordered from China, and instructed the **BLACKSTONE** employee to falsely state, "somewhere in the US if a client is asking."

13

18.     In or around August 2015, **PHILLIP BRAUN** and **AARON SINGERMAN** instructed **BLACKSTONE's** sales employees to sell Super DMZ RX 2.0 through Fight Pharm as a product called Methyl DMZ.

19.     On or about August 19, 2015, after receiving an email from the wife of an individual who reported serious health effects from Alpha 1 Max, **PHILLIP BRAUN** directed a **BLACKSTONE** employee in an email, "Don't reply to this scammer."

20.     On or about August 22, 2015, **PHILLIP BRAUN** emailed **AARON SINGERMAN** and asked, "I guess tell the people who want pros [prohormones] about Fight pharm [sic] right Aaron?"

21.     On or about August 31, 2015, **PHILLIP BRAUN** signed a signature card for a Fight Pharm business checking account ending in 1697.

22.     On or about September 4, 2015, **PHILLIP BRAUN** forwarded an email to **ANTHONY VENTRELLA**, providing information from an individual in China who was offering to sell SARM ingredients, including ostarine.

23.     On or about September 23, 2015, in response to an email from a customer asking why **BLACKSTONE** was removing SARMS from the company's web site, **JAMES BOCCUZZI** wrote, "Too much of a risk to sell fda is investigating."

24.     On or about September 24, 2015, in an email to Unindicted Co-conspirator 4, **AARON SINGERMAN**, **JAMES BOCCUZZI**, **DAVID WINSAUER**, and other **BLACKSTONE** employees, **PHILLIP BRAUN** wrote, "I don't even want SARMS in my warehouse . . . I am more nervous about this then [sic] I was about the Pro_hormones."

14

25.     On or about September 25, 2015, **ANTHONY VENTRELLA** emailed a pharmaceutical ingredient supplier in China, writing that he was "looking to purchase sarms and prohormones."

26.     On or about September 25, 2015, **JAMES BOCCUZZI** wrote an email to a **BLACKSTONE** customer about SARMs, and stated, "I will have them in a different brand for you.  I had to get them off the [**BLACKSTONE**] label."

27.     On or about October 9, 2015, **PHILLIP BRAUN** answered an email from a customer about SARMs, including Ostapure, and said, "Illegal to sell them!"

28.     On or about October 9, 2015, **PHILLIP BRAUN** sent another email stating, "Sarms are under serious federal testing by medical companies.  Osterine [sic] for instance is in level 2 testing meaning it's considered not safe for human consumption.  To sell them as a dietary supplement would be illegal and comparable to putting something like heroin in bottles and selling it."

29.     On or about October 13, 2015, **JAMES BOCCUZZI** sent an email to **ANTHONY VENTRELLA,** Unindicted Co-conspirator 2 and **AARON SINGERMAN,** regarding a recent sale of Ostapure.  **BOCCUZZI's** email subject stated, "Payment for 1000 Ostapure to be entered through Fight Pharm."

30.     On or about October 27, 2015, **AARON SINGERMAN** emailed a **BLACKSTONE** salesperson about Fight Pharm, and directed the salesperson to falsely tell customers: "Just make SURE to explain that is NOT our company."

31.     On or about October 27, 2015, **PHILLIP BRAUN**, in an email to **AARON SINGERMAN** about Fight Pharm, wrote, "ITs [sic] very important people do not think we have anything to do with this!!"

32.     On or about November 6, 2015, **PHILLIP BRAUN**, **AARON SINGERMAN** and **ANTHONY VENTRELLA** caused VBS to be incorporated under the laws of Florida.

33.     On or about November 20, 2015, **PHILLIP BRAUN** texted "yes" to **DAVID WINSAUER** after being asked by **WINSAUER** whether an illegal dietary supplement product could be sold at a retail store that **BRAUN** and **SINGERMAN** controlled.

34.     On or about February 25, 2016, **ANTHONY VENTRELLA** sent a text message that notified an employee that an incoming package of powder of a raw ingredient to manufacture **BLACKSTONE** and **VENTECH** products was falsely labeled.

35.     On or about August 4, 2016, **JAMES BOCCUZZI**, sent an email to a wholesale customer and attached a document entitled "Certificate of Free Sale," which falsely described **BOCCUZZI** as an FDA employee. In the email, **BOCCUZZI** wrote, "This is the best I can do. I dont [sic] even feel comfortable doing this because I am impersonating the FDA and our business could get shut down, tons of people will lose their jobs."

36.     On or about January 28, 2017, **PHILLIP BRAUN**, in an email to a **BLACKSTONE** employee who was considering how to respond to a customer complaint, wrote, "I'm not worried about losing the customer. Im [sic] concerned with her making it public."

37.     On or about February 16, 2017, **ANTHONY VENTRELLA**, after being informed that a search warrant was being conducted by FDA at **VENTRELLA's** business, sent a text message to one of his employees that said, "Shit.  If you can hide the pros [prohormones] please do."

38.     On or about February 16, 2017, during an interview with FDA special agents, **DAVID WINSAUER** falsely claimed that **BLACKSTONE** had stopped selling Super DMZ in December 2014.

16

39.    On or about February 16, 2017, during an interview with FDA special agents, **JAMES BOCCUZZI** falsely claimed that **BLACKSTONE** had stopped selling the Super DMZ almost two years previously.

40.    On or about August 30, 2018, after being notified by a customer that an FDA special agent wanted to speak to the customer about **BLACKSTONE, PHILLIP BRAUN** instructed the customer in an email, writing, "Ignore that."

All in violation of Title 18, United States Code, Section 371.

**COUNTS 2-3**
**Introduction of Unapproved New Drugs into Interstate Commerce**
**(21 U.S.C. §§ 331(d), 355(a), and 333(a)(2))**

1.    Paragraphs 1-10 and 12-13 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates listed below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**BLACKSTONE LABS, LLC,**
**PHILIP BRAUN,**
**a/k/a "PJ," and**
**AARON SINGERMAN,**

with intent to defraud and mislead, did cause to be introduced and delivered for introduction into interstate commerce "Super DMZ RX 2.0," a new drug within the meaning of Title 21, United States Code, Section 321(p) that did not have in effect an approval of an application filed pursuant to Title 21, United States Code, Section 355(b) and 355(j), and was not exempted from such approval pursuant to Title 21, United States Code, Section 355(i), as charged in the individual counts below:

17

| Count | Approximate Date | Introduction into Interstate Commerce |
|-------|------------------|---------------------------------------|
| 2 | 08/1/2014 | 50 bottles of "Super DMZ RX 2.0" shipped from the Southern District of Florida to Arkansas |
| 3 | 09/26/2014 | 400 bottles of "Super DMZ RX 2.0" shipped from the Southern District of Florida to Arkansas |

In violation of Title 21, United States Code, Sections 331(d), 333(a)(2), and 355(a), and Title 18, United States Code, Section 2.

## COUNT 4
### Conspiracy to Distribute Controlled Substances
### (21 U.S.C. § 846)

1.      Paragraphs 10-13, 15-17 and 19-21 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      Steroids are synthetic variations of the male sex hormone testosterone, which is produced naturally in the human body.  Steroids can produce anabolic and androgenic effects.  "Anabolic" effects relate to the increase and growth of muscle and bone mass.  "Androgenic" effects relate to the development of male reproductive organs and characteristics.  Anabolic steroids can be misused and cause harm to the body.  Misuse of anabolic steroids may lead to serious, even permanent, health problems, such as kidney failure, liver damage, high blood pressure, and increases in blood cholesterol.

3.      From on or about December 18, 2014, through in or around February 2017, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**PHILLIP BRAUN, a/k/a "PJ,"**
**AARON SINGERMAN,**
**ANTHONY VENTRELLA,**
**a/k/a "Joey,"**
**JAMES BOCCUZZI,**

18

**DAVID WINSAUER,**
**BLACKSTONE LABS, LLC, and**
**VENTECH LABS, LLC,**

did knowingly and willfully combine, conspire, confederate, and agree with each other, Unindicted Co-conspirator 2, Unindicted Co-conspirator 3, Unindicted Co-conspirator 4, and others, known and unknown to the Grand Jury, to manufacture, distribute, and possess with intent to manufacture and distribute Schedule III controlled substances, that is, the anabolic steroids trendione, halodrol, epistane, methylstenbolone, dimethazine, and methyl-1-etiocholenolol, as defined by Title 21, United States Code, Section 802(41)(A) and (C)(i)-(iii), in violation of Title 21, United States Code, Section 841(a)(1).

With respect to the defendants, **PHILLIP BRAUN, AARON SINGERMAN, ANTHONY VENTRELLA, JAMES BOCCUZZI, DAVID WINSAUER, BLACKSTONE LABS, LLC, VENTECH LABS, LLC,** and Unindicted Co-Conspirator 2, Unindicted Co-Conspirator 3, and Unindicted Co-Conspirator 4, the controlled substances involved in the conspiracy attributable to them as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was a mixture and substance containing a detectable amount of trendione, halodrol, epistane, methylstenbolone, dimethazine, or methyl-1-etiocholenolol, Schedule III controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(E)(i).

It is further alleged pursuant to Title 21, United States Code, Section 841(b)(1)(E)(i) that serious bodily injury resulted to C.H. from the use of methyl-1-etiocholenolol.

All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(E)(i).

## COUNT 5
### Distribution of a Controlled Substance
### (21 U.S.C. § 841(a)(1))

1.      Paragraphs 10, 12-13, and 15-17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about June 30, 2015, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**PHILLIP BRAUN, a/k/a "PJ,"
AARON SINGERMAN,
ANTHONY VENTRELLA, a/k/a "Joey,"
JAMES BOCCUZZI,
DAVID WINSAUR, and
BLACKSTONE LABS, LLC,**

did knowingly and intentionally distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

Pursuant to Title 21, United States Code, Section 841(b)(1)(E)(i) and (iii), it is further alleged that this violation involved 60,000 capsules of a mixture and substance containing a detectable amount of dimethazine and methylstenbolone, which were Schedule III controlled substances.

## COUNT 6
### Distribution of a Controlled Substance
### (21 U.S.C. § 841(a)(1))

1.      Paragraphs 10-12 and 15-17 of the General Allegations section of this Indictment are re-alleged and incorporate by reference as though fully set forth herein.

2.      On or about September 1, 2016, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

20

**PHILLIP BRAUN, a/k/a "PJ,"**
**ANTHONY VENTRELLA, a/k/a Joey,"**
**JAMES BOCCUZZI,**
**DAVID WINSAUER,**
**BLACKSTONE LABS, LLC, and**
**VENTECH LABS, LLC,**

did knowingly and intentionally distribute a controlled substance, in violation of Title 21, United

States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

Pursuant to Title 21, United States Code, Section 841(b)(1)(E)(i) and (iii), it is further

alleged that this violation involved 30,000 capsules of a mixture and substance containing a

detectable amount of dimethazine and methylstenbolone, which are Schedule III controlled

substances.

## COUNT 7
**Distribution of a Controlled Substance**
**(21 U.S.C. § 841(a)(1))**

1.      Paragraphs 10 and 12 of the General Allegations section of this Indictment are re-

alleged and incorporated by reference as though fully set forth herein.

2.      On or about September 14, 2016, in Palm Beach County, in the Southern District

of Florida, and elsewhere, the defendants,

**BLACKSTONE LABS, LLC, and**
**PHILLIP BRAUN,**

did knowingly and intentionally distribute a controlled substance, in violation of Title 21, United

States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

Pursuant to Title 21, United States Code, Section 841(b)(1)(E)(i) and (iii), it is further

alleged that this violation involved a mixture and substance containing a detectable amount of

dimethazine, a Schedule III controlled substance.

21

**COUNT 8**
**Possession with Intent to Distribute a Controlled Substance**
**(21 U.S.C. § 841(a)(1))**

1.      Paragraphs 11 and 15 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about February 16, 2017, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**ANTHONY VENTRELLA, a/k/a "Joey," and**
**VENTECH LABS, LLC,**

did knowingly and intentionally possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

Pursuant to Title 21, United States Code, Section 841(b)(1)(E)(i) and (iii), it is further alleged that this violation involved a mixture and substance containing a detectable amount of dimethazine, which is a Schedule III controlled substance.

**COUNTS 9-11**
**Money Laundering**
**(18 U.S.C. § 1957)**

1.      Paragraphs 10 and 13 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth as to each count below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**AARON SINGERMAN,**

engaged and attempted to engage in a monetary transaction affecting interstate and foreign commerce by, through, and to a financial institution, in criminally derived property of a value

22

greater than $10,000, such property having been derived from specified unlawful activity and knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity.

| Count | Approximate Date | Monetary Transaction |
|---|---|---|
| 9 | 02/16/2015 | Transferred and exchanged check number 1371, made payable to Excell Auto Group in the amount of $218,117.38, from an account of **BLACKSTONE** at J.P. Morgan Chase Bank, N.A., account ending in 2830, for the purchase of a 2013 Rolls Royce |
| 10 | 06/19/2015 | Transferred and exchanged check number 1737, made payable to Nova Title in the amount of $190,790, from an account of **AARON SINGERMAN** at J.P. Morgan Chase Bank, N.A., account ending in 9542, for the purchase of a house in Palm Beach County |
| 11 | 08/26/2015 | Transferred and exchanged check number 1719, made payable to Boynton Beach Associates XXIV, LLLP in the amount of $259,634, from an account of **AARON SINGERMAN** at J.P. Morgan Chase Bank, N.A., account ending in 9542, for the purchase of a house in Palm Beach County |

It is further alleged that the specified unlawful activity is conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 371.

In violation of Title 18, United States Code, Sections 1957(a) and 2.

### COUNTS 12-14
### Money Laundering
### (18 U.S.C. § 1957)

1.     Paragraphs 10 and 12 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth as to each count below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**PHILLIP BRAUN, a/k/a "PJ,"**

engaged and attempted to engage in a monetary transaction affecting interstate and foreign commerce by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity and knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity.

| Count | Approximate Date | Monetary Transaction |
|:-----:|:----------------:|----------------------|
| 12 | 03/04/2015 | Wire transfer of $43,000 from an account of **PHILLIP BRAUN** at J.P. Morgan Chase Bank, N.A., account ending in 8539, to a Bank of America trust account of an attorney in Palm Beach County, account ending in 8202, for the purchase of a house at 284 NE 7th Street, Boca Raton, Florida |
| 13 | 05/23/2015 | Transferred and exchanged check number 1515, made payable to Excell Auto Group Inc. in the amount of $111,998.38, from an account of **BLACKSTONE** at J.P. Morgan Chase Bank, N.A., account ending in 2830, for the purchase of a 2012 Mercedes |
| 14 | 06/17/2015 | Wire transfer of $327,410.81 from an account of **PHILLIP BRAUN** at J.P. Morgan Chase Bank, N.A., account ending in 8539, to a Bank of America trust account of an attorney in Palm Beach County, account ending in 8202, to complete the purchase of a house located at 284 NE 7th Street, Boca Raton, Florida |

It is further alleged that the specified unlawful activity is conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 371.

In violation of Title 18, United States Code, Sections 1957(a) and 2.

24

## FORFEITURE
### (18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and 21 U.S.C. § 853(a)(1)-(2))

1.      The allegations of this Indictment are re-alleged and fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which **PHILLIP BRAUN, AARON SINGERMAN, ROBERT DIMAGGIO, ANTHONY VENTRELLA, JAMES BOCCUZZI, DAVID WINSAUER, BLACKSTONE LABS, LLC,** and **VENTECH LABS, LLC** have an interest.

2.      Upon conviction of a conspiracy to violate Title 18, United States Code, Section 1341 or Section 1343, as alleged in this Indictment, any defendant so convicted shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

3.      Upon conviction of a violation of Title 21, United States Code, Section 331, Section 333, or Section 355, as alleged in this Indictment, any defendant so convicted shall forfeit to the United States any unapproved new drug, pursuant to Title 21, United States Code, Section 334(a)(1).

4.      Upon conviction of a violation of, or a conspiracy to violate, Title 21, United States Code, Section 841, as alleged this Indictment, any defendant so convicted shall forfeit to the United States of America, pursuant to Title 21, United States Code, Section 853(a)(1)-(2), any property constituting, or derived from, any proceeds the convicted defendant obtained, directly or indirectly, as a result of such violation, and any of the convicted defendant's property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation.

5.      Upon conviction of a violation of Title 18, United States Code, Section 1957, as alleged in this Indictment, any defendant so convicted shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

6.      The property that is subject to forfeiture includes, but is not limited to, the following:

Real Property:

a)      The real property known and numbered as 284 NE 7th Street, Boca Raton, Florida, together with all improvements, appurtenances, attachments, and fixtures thereon and therein;

b)      The real property known and numbered as 16598 Fleur de Lis Way, Delray Beach, Palm Beach County, together with all improvements, appurtenances, attachments, and fixtures thereon and therein;

Bank Accounts:

Certified funds in the amount of $223,430.40 (US) made payable by JP Morgan Chase Bank, N.A. to the United States Marshals Service by cashier's check number 4555916142, dated March 6, 2017, which were seized pursuant to a warrant from account number 117352830 held at JP Morgan Chase Bank, N.A., in the name of Blackstone Labs, LLC;

Automobiles:

One (1) 2012 Mercedes (VIN number WDDRK7HAXCA008764);

Business equipment: The business equipment located at 1140 Holland Drive, Suite 12, Boca Raton, Florida, which includes the following:

    a)    PER-FIL Micro-C Single Head Automatic Auger Filler;

    b)    CVC-EC30 Wrap Labeler;

    c)    C60 Hot Stamp Printer/Coder;

    d)    Titan Pharmaceutical – Fully Automatic Encapsulation Machine;

    e)    Titan Pharmaceutical – V-Mixer model TVM-1000;

    f)    ProFiller 3700 capsule-filling system;

    g)    ProFiller 3700 capsule-filling system;

    h)    Semi-Auto Capsule Filler Model DJS-8; and

    i)    Electronic Channel Counter (12-track).

Forfeiture Money Judgment(s): A sum of money equal in value to the following, for which the United States will seek entry as a forfeiture money judgment against a convicted defendant as part of that defendant's sentence in this case:

    a)    Any property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy to violate Title 18, United States Code, Section 1341 or Section 1343, as alleged in this Indictment;

    b)    Any property constituting, or derived from, any proceeds a convicted defendant obtained, directly or indirectly, as a result of a violation of, or a conspiracy to violate, Title 21, United States Code, Section 841, as alleged this Indictment, and any of the convicted defendant's property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation; and

    c)    The property, real or personal, that was involved in a violation Title 18,

27

United States Code, Section 1957, as alleged in this Indictment, or any property traceable to such property.

All pursuant to Title 18, United States Code, Sections 981, and Title 21, United States Code, Section 334(a)(1), as made applicable by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982, and Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

GUSTAV W. EYLER
ACTING DIRECTOR
U. S. DEPARTMENT OF JUSTICE
CONSUMER PROTECTION BRANCH

ALISTAIR READER, TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE
CONSUMER PROTECTION BRANCH

DAVID A. FRANK, TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE
CONSUMER PROTECTION BRANCH

28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

PHILLIP BRAUN, et al.,

                    Defendant.
_____ /

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

New Defendant(s)          Yes _____   No _____
Number of New Defendants        _____
Total number of counts          _____

**Court Division:** (Select One)

____ Miami        ____ Key West
____ FTL     __X__ WPB    ____ FTP

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:     (Yes or No)     NO____
    List language and/or dialect     _____

4.  This case will take     20   days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)

| | | | | (Check only one) | | |
|---|---|---|---|---|---|---|
| I | 0 to 5 days | | | Petty | | |
| II | 6 to 10 days | ____ | | Minor | | ____ |
| III | 11 to 20 days | __X__ | | Misdem. | | |
| IV | 21 to 60 days | | | Felony | | __X__ |
| V | 61 days and over | ____ | | | | |

6.  Has this case been previously filed in this District Court?  (Yes or No)     No
If yes:
Judge: _____     Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?     (Yes or No)     No
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers:     17-MJ-2116; 17-MJ-6071; 17-MJ-8047; 17-MJ-8048; 17-MJ-6319
                                    18-MJ-6385; 18-cv-81352-Marra
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the District of _____
Is this a potential death penalty case? (Yes or No)     No

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?     Yes ____     No  X

_____
ALISTAIR READER
DOJ TRIAL ATTORNEY
Court ID No. A5502357

*Penalty Sheet(s) attached

REV 5/3/17

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**      **PHILLIP BRAUN, a/k/a "PJ"**

**Case No:**

Count #:   1

  Conspiracy to Defraud the United States and to Commit Federal Offenses

  Title 18, United States Code, Section 371

**\*Max Penalty**:   Five (5) years' imprisonment

Counts #:   2, 3

  Introduction of Unapproved New Drugs Into Interstate Commerce

  Title 21, United States Code, Sections 331(d), 355(a), and 333(a)(2)

**\*Max Penalty**:    Three (3) years' imprisonment as to each count

Count #:    4

  Conspiracy to Distribute Controlled Substances

  Title 21, United States Code, Section 846

\*Max Penalty:    Fifteen (15) years' imprisonment

Counts #:   5, 6, 7

  Distribution of a Controlled Substance

  Title 21, United States Code, Section 841(a)(1)

\*Max Penalty:    Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**     PHILLIP BRAUN, a/k/a "PJ"

**Case No:**

Counts #:    12, 13, 14

  Money Laundering

  Title 18, United States Code, Section 1957(a)

**\*Max Penalty:**    Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   **AARON SINGERMAN**

**Case No:** _____

Count #:   1

  Conspiracy to Defraud the United States and to Commit Federal Offenses

  Title 18, United States Code, Section 371

**\*Max Penalty**:   Five (5) years' imprisonment

Counts #:   2, 3

  Introduction of Unapproved New Drugs Into Interstate Commerce

  Title 21, United States Code, Sections 331(d), 355(a), and 333(a)(2)

**\*Max Penalty**:   Three (3) years' imprisonment as to each count

Count #:   4

  Conspiracy to Distribute Controlled Substances

  Title 21, United States Code, Section 846

\*Max Penalty:   Fifteen (15) years' imprisonment

Counts #:   5

  Distribution of a Controlled Substance

  Title 21, United States Code, Section 841(a)(1)

\*Max Penalty:   Ten (10) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**     **AARON SINGERMAN**

**Case No:**

Counts #:    9, 10, 11

Money Laundering

Title 18, United States Code, Section 1957(a)

**\*Max Penalty:**    Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**     **ANTHONY VENTRELLA, a/k/a "Joey"**

**Case No:** _____

Count #:   1

 Conspiracy to Defraud the United States and to Commit Federal Offenses

 Title 18, United States Code, Section 371

**\*Max Penalty**:   Five (5) years' imprisonment

Count #:    4

  Conspiracy to Distribute Controlled Substances

  Title 21, United States Code, Section 846

\*Max Penalty:      Fifteen (15) years' imprisonment

Counts #:   5, 6

  Distribution of a Controlled Substance

  Title 21, United States Code, Section 841(a)(1)

\*Max Penalty:      Ten (10) years' imprisonment as to each count

Count #:   8

 Possession With Intent to Distribute a Controlled Substances

 Title 21, United States Code, Section 841(a)(1)

**\*Max Penalty**:   Ten (10) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   **JAMES BOCCUZZI**

**Case No:**

Count #:   1

Conspiracy to Defraud the United States and to Commit Federal Offenses

Title 18, United States Code, Section 371

**\*Max Penalty**:   Five (5) years' imprisonment

Count #:   4

Conspiracy to Distribute Controlled Substances

Title 21, United States Code, Section 846

\*Max Penalty:   Fifteen (15) years' imprisonment

Counts #:   5, 6

Distribution of a Controlled Substance

Title 21, United States Code, Section 846

\*Max Penalty:   Fifteen (15) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**    **DAVID WINSAUER**

Case No: _____

Count #:   1

  Conspiracy to Defraud the United States and to Commit Federal Offenses

  Title 18, United States Code, Section 371

**\*Max Penalty**:   Five (5) years' imprisonment

Count #:    4

  Conspiracy to Distribute Controlled Substances

  Title 21, United States Code, Section 846

\*Max Penalty:     Fifteen (15) years' imprisonment

Count #:    5, 6

  Distribution of a Controlled Substance

  Title 21, United States Code, Section 846(a)(1)

\*Max Penalty:     Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**    **ROBERT DIMAGGIO**

**Case No:**

Count #:   1

  Conspiracy to Defraud the United States and to Commit Federal Offenses

  Title 18, United States Code, Section 371

**\*Max Penalty**:   Five (5) years' imprisonment

Count #:



**\*Max Penalty**:

Count #:



\*Max Penalty:

Count #:



\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**    **BLACKSTONE LABS, LLC**

**Case No:** _____

Count #:    1

   Conspiracy to Defraud the United States and to Commit Federal Offenses

   Title 18, United States Code, Section 371

**\*Max Penalty**:    Five (5) years' imprisonment

Counts #:    2, 3

   Introduction of Unapproved New Drugs Into Interstate Commerce

   Title 21, United States Code, Sections 331(d), 355(a), and 333(a)(2)

**\*Max Penalty**:    Three (3) years' imprisonment as to each count

Count #:    4

   Conspiracy to Distribute Controlled Substances

   Title 21, United States Code, Section 846

\*Max Penalty:    Fifteen (15) years' imprisonment

Counts #:    5, 6, 7

   Distribution of a Controlled Substance

   Title 21, United States Code, Section 841(a)(1)

\*Max Penalty:    Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

Defendant's Name:     **VENTECH LABS, LLC**

Case No:

Count #:   1

  Conspiracy to Defraud the United States and to Commit Federal Offenses

  Title 18, United States Code, Section 371

**\*Max Penalty**:   Five (5) years' imprisonment

Count #:   4

  Conspiracy to Distribute Controlled Substances

  Title 21, United States Code, Section 846

\*Max Penalty:     Fifteen (15) years' imprisonment

Counts #:   6, 8

  Distribution of a Controlled Substance

  Title 21, United States Code, Section 841(a)(1)

\*Max Penalty:     Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**