UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 19-cr-80030-DIMITROULEAS

**UNITED STATES OF AMERICA,**

v.

**JAMES BOCCUZZI,**

    **Defendant.**

_____/

## GOVERNMENT'S OPPOSITION TO A SENTENCE REDUCTION PURSUANT TO 18 U.S.C § 3582(c)(2)

The United States opposes a sentence reduction for defendant James Boccuzzi, pursuant to 18 U.S.C. § 3582(c)(2), in light of a potentially retroactive amendment to the United States Sentencing Guidelines. The Court *sua sponte* entered an order that the government show cause why this Court should not reduce the defendant's sentence. [DE 772]. Even though the defendant is eligible, the 18 U.S.C. § 3553(a) factors weigh against granting relief, especially considering the victims harmed by the offense, Boccuzzi's history, the seriousness of the offense, and need to deter similar conduct, all of which suggest a significant sentence of incarceration is appropriate.

## COURSE OF PROCEEDINGS IN THE CRIMINAL CASE

Bocuzzi was indicted in 2019 along with five individuals and two corporations. (DE 1). All of his co-defendants pleaded guilty in advance of trial, along with three other co-conspirators charged via information. After numerous continuances, Boccuzzi was convicted by a jury of conspiracy to defraud the FDA and conspiracy to distribute controlled substances, specifically designer anabolic steroids. [DE 676]. He did not appeal his conviction.

The Court and Probation calculated Boccuzzi's Sentencing Guidelines for his offenses and his combined adjusted offense level as a level 24, with an advisory guidelines range of 51-63

months of incarceration. [DE 728, PSR]; Sentencing Hr'g Tr. 3: 15-17, 5: 20-24 (March 11, 2022). The two offenses are grouped together for sentencing purposes, pursuant to Section 3D1.2(b).

### A. Count 1: Conspiracy to Defraud the FDA

The base offense level was 6, pursuant to 2X1.1(a) and 2B1.1(a)(2). The offense level increased by 16 pursuant to 2B1.1(b)(1)(I). The offense level increases by 2 because it was committed through mass marketing, pursuant to 2B1.1(B)(2)(A)(ii). Therefore, the total adjusted offense level was 24.

### B. Count 4: Conspiracy to Distribute Controlled Substances

The base offense level was 20, pursuant to Section 2D1.1(a)(5) and 2D1.1.(c)(10). The base offense level increased by 2, pursuant to Section 2D1.1(b)(7), because controlled substances were distributed through mass-marketing by means of an interactive computer service. Therefore, the total adjusted offense level was 22.

### C. Other Factors

At sentencing, the Court noted that it was "important to impose a sentence that promotes respect for the law and acts as a deterrent." Sentencing Hr'g Tr. 15:2-5. The Court also held that the defendant's statement of remorse, waiver of appeal, and presence of family support at sentencing were mitigating factors. *Id.* 14-15.

### D. Term of Imprisonment

On March 11, 2022, the Court imposed a term of imprisonment of 51 months on both counts to run concurrently, and a term of supervised release of 3 years on both counts, to run concurrently. The Court imposed a $20,000 fine and $200 special assessment, along with special conditions that the defendant not associate with any co-defendants in this case, or own, operate in

or act as a consultant in any manufacturing of dietary or nutritional supplements. The defendant is currently serving his sentence at Residential Reentry Management Miami with an anticipated release date of April 14, 2024. He has served approximately 22 months of his sentence. The defendant has not committed any disciplinary infraction during his time in custody.

## Offense Conduct

Boccuzzi was a key player in the crimes committed by Blackstone Labs, LLC (Blackstone), where the defendants sold millions of pills of steroids, while disregarding health risks to tens of thousands of consumers. Several victims entered statements into the record at sentencing, including four victims who were hospitalized and another who suffered permanent changes to their body. [Notice of Redacted Victim Impact Statements, DE 670]. Three of those victims suffered liver failure. [DE 670 Exhibit A]. Although the jury declined to find beyond a reasonable doubt that Boccuzzi caused the alleged serious bodily injury alleged in Count 4, this Court made findings in multiple sentencing hearings for co-defendants that the victims' injuries and damages were real. The Court imposed joint restitution on Boccuzzi's co-defendants for the tens of thousands of dollars in costs associated with the injuries and hospitalization of these same victims. E.g., [DE 724, 720, 721, 712]. Boccuzzi's sentence omitted the restitution only because the restitution had been paid in full by co-defendants prior to Boccuzzi's sentencing.

As demonstrated at the trial, Boccuzzi was a central participant in the indicted criminal scheme to sell unsafe products falsely labeled as dietary supplements. Boccuzzi and his co-defendants sold products containing designer anabolic steroids, and products containing a type of research chemicals, selective androgen receptor modulators (SARMs). Blackstone also sold numerous other illegal products, including products containing unsafe synthetic stimulants.

The defendant joined Blackstone early in its existence and served as the director of sales.

Boccuzzi started working with Blackstone in July 2013. The company subsequently had to stop selling seven of their first ten products because they were "banned or illegal." Trial Tr. 42:7-9 (Dec. 1, 2021) (Testimony of David Winsauer). Boccuzzi became the highest volume salesman. Records from the investigation show that from 2014 to 2016, the defendants sold more than $2.9 million in steroid products alone. As explained in the government's sentencing memo, this totaled more than four million doses of steroids. Boccuzzi was instrumental in distributing this huge volume, which was more than 65 times the highest guideline range for steroids in the US Sentencing Guidelines. *See* U.S.S.G. § 2D1.1 (c) Drug Quantity Table (recommending a Base Offense Level of 20 for 60,000 units or more of Schedule III substances, other than Ketamine). In one 2016 transaction alone, Boccuzzi conspired to sell 150,000 capsules. *See* Gov. Ex. 458A

### A. Defendant's Acts Caused Serious Harm to Victims

Most significantly, Boccuzzi and his co-conspirators sold their products to victims who did not know they were steroids and would not have taken them if they had known. *E.g.*, Trial Tr. 198-99 (Dec. 1, 2021). One victim who testified at trial, C.H., nearly died after taking a Blackstone product. *Id.* at 181-90. Dr. Paul Hayashi, a hepatologist and expert in drug-induced liver injury, testified that the cause of C.H's liver injury was most likely the body building supplement he took, Trial Tr. 77:5-7 (Dec. 2, 202) , and that C.H.'s case was "the most severe case [he'd] ever seen" *id.* at 81:13. Dr. Randal Detweiler, a nephrologist and expert in kidney injury, testified that, while hospitalized, C.H.'s kidney function was less than five percent of normal, *id.* at 107:18-20, and C.H. received a blood transfusion, *id.* at 104-105, and a catheter installed in his jugular vein in anticipation of needing dialysis, *id.* at 107:18-22, although he ultimately stabilized and improved.

Overall, five victims (including C.H.) submitted written statements to the Court at

sentencing explaining the substantial harm Blackstone products caused them.  [DE 670]  C.H. wrote, "The Strain that this situation put my family in is now taking years to recover from financially, physically and mentally.  My prayer is that no other family ever must endure this type of hardship at the hands of companies who would not even respond to an email from my wife[.]"  [DE 670-1 at 2].  L.V., who was hospitalized in Ohio, stated, "I fear the longterm damage those pills done to my liver and how many years it took from my life.  I had family come in from out of state to visit me in the hospital on emergency trips cause everyone thought i was going to die, including myself.  I was so afraid i was going to leave my young wife abandoned to raise my child alone."  [DE 670-1 at 3].  R.R. stated: "I was informed [by doctors] that i was experiencing liver failure from the 'supplements' bought from Blackstone Labs. I spent approximately two months bedridden, missing seven weeks of work."  [DE 670-1 at 5].

Boccuzzi knew that Blackstone's products could harm people.  For example, Boccuzzi sent a 2016 email titled "Super DMZ Negetive [sic] Side Effects" to another Blackstone employee.  Gov. Ex. 1222.  Boccuzzi listed "liver toxic" as a side effect.  *Id.*  Evidence at trial showed that Boccuzzi also did not care that their business was criminal.  As he noted to a co-conspirator in January 2015, "I am on track to do over 200 orders this month too!  Im [sic] not letting any ban stop me[.]"  Gov. Ex. 146.  He also lied to FDA special agents when interviewed. Trial Tr. 51:4-13 (Dec. 7, 2021).

Although Boccuzzi is a first-time offender, Blackstone was actually the *second* supplement firm committing crimes that he worked at.  Boccuzzi also worked in sales for USP Labs, a Texas company that was shut down for selling illegal and unsafe supplements.  *See United States v. USP Labs et al.*, No. 3:15-cr-496 (N.D. Tex.).  Remarkably, USP Labs' products

were also alleged to have caused liver failure in unsuspecting consumers.[1]  One of Boccuzzi's earliest efforts at Blackstone was to translate his experience at USP Labs into a business plan for Blackstone to sell products with the same unlawful ingredients that led UPS Labs to face law enforcement scrutiny.  E.g., Gov. Ex. 1212.

## LEGAL STANDARD

A motion to reduce an otherwise final sentence under 18 U.S.C. § 3582(c)(2) is a limited and narrow exception to the rule that final sentences are not to be modified.  *See United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir. 2003). Specifically, 18 U.S.C. § 3582(c)(2), provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court *may* reduce the term of imprisonment, after consulting the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction *is consistent with applicable policy statements issued by the Sentencing Commission*.

18 U.S.C. § 3582(c)(2) (emphasis added).  Thus, under 18 U.S.C. § 3582(c)(2), a district court must undertake a two-step process.  *See Dillon v. United States*, 560 U.S. 817 (2010).  First, the court must determine if the defendant is eligible for relief under 18 U.S.C. § 3582(c)(2).  *Id*. at 825–27.  A defendant is eligible for such relief only if a retroactive amendment to the sentencing guidelines lowers his applicable sentencing guidelines range. *Id*.

Then, if a defendant is eligible for 18 U.S.C. § 3582(c)(2) relief, the court must determine if it will exercise its discretion to reduce that defendant's sentence after it has considered the 18

---

[1] E.g., Natasha Singer, "Supplements Called Risky Are Destroyed," NY Times (available at www.nytimes.com/2013/07/17/business/supplements-called-risky-are-destroyed.html) (July 16, 2013) ("The action reflects an escalating federal crackdown on workout boosters and fat-burning products that contain an amphetaminelike stimulant called dimethylamylamine, or DMAA for short.").
    Natasha Singer and Peter Lattman, "U.S. Moves to Seize Dietary Supplement From GNC Warehouses," NY Times (available at www.nytimes.com/2013/06/22/business/us-moves-to-seize-dietary-supplement-from-gnc-warehouses.html?action=click&module=Related Coverage&pgtype=Article&region=Footer) (June 21, 2013).

U.S.C. § 3553(a) factors[2], *id*. at 826–27, and "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." U.S.S.G. § 1B1.10, cmt. n. 1(B).

Under the § 1B1.10(a)(1) policy statement: "[i]n a case in which a defendant is serving a term of imprisonment, and the guideline range applicable . . . has subsequently been lowered as a result of an amendment . . . the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." Notably, "if a defendant receives a sentence modification under § 3582(c)(2), subsequent reduction based on the same amendment to the Guidelines is not available—the modified sentence is no longer based on the outdated Guidelines range." *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1240 (11th Cir. 2017).

Last, it should be noted that even though the proposed amendment goes into effect on November 1, 2023, the Sentencing Commission has determined that any order reducing a defendant's sentence cannot have an effective date prior to February 1, 2024. *See* U.S.S.G. § 1B1.10(e)(2) (effective November 1, 2023).[3] "A reduction based on the retroactive application of Part A or Part B, Subpart 1 of Amendment 821 that does not comply with the requirement that the order take effect no earlier than February 1, 2024, is not consistent with this policy statement

---

[2]  The 18 U.S.C. § 3553(a) factors that the court must consider in ruling on a defendant's 18 U.S.C. § 3582(c)(2) motion include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to accomplish certain aims, such as to reflect the seriousness of the offense, afford adequate deterrence, protect the public, or the defendant's educational, medical, or correctional treatment needs; (3) the kinds of sentences available; (4) the applicable sentencing range under the guidelines; (5) any pertinent Sentencing Commission policy statement; (6) the need to avoid unwanted disparities among defendants; (7) the need to provide restitution to any victim of the offense. 18 U.S.C. § 3553(a).

[3]  If a defendant is scheduled for release before February 1, 2024, he is not entitled to relief under the new amendment.

and therefore is not authorized under 18 U.S.C. § 3582(c)(2)." U.S.S.G. § 1B1.10, cmt. n. 7 (effective November 1, 2023).

## LEGAL ANALYSIS

### Eligibility

The Court here is seeking government's position on relief based on the zero-point offenders amendment. This provision "provide[s for] a decrease of two levels from the offense level . . . for defendants who did not receive any criminal history points . . . and whose instant offense did not involve specified aggravating factors." Application to Amendment 821 (Parts A and B, Subpart 1 Only), Amendment to the Sentencing Guidelines. Specifically, a defendant must meet all the following criteria to be eligible for relief:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

    (10)    the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1.

The defendant in this case is eligible for relief under the new "zero-point offender" amendment because he did not have criminal points and none of the disqualifying factors from U.S.S.G. § 4C1.1 apply. As a result, a retroactively revised sentencing guideline would be Level 22, with a guideline range of 41-51 months.

## The 18 U.S.C. § 3553(a) Factors

Turning to step two, Section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." Id. app. note 1(B)(i); see also U.S.S.G. §1B1.10 background ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right."). A reduction here is not warranted under the § 3553(a) factors, specifically, Boccuzzi's role in offense, the offense conduct, and the harm his conduct caused.

The Court correctly concluded at sentencing that Boccuzzi's conduct merited a substantial sentence of incarceration within the Sentencing Guidelines range of 51-63 months. Unlike his co-defendants who all pleaded guilty and admitted their criminal conduct, Boccuzzi completely rejected responsibility for his involvement in the Blackstone criminal conspiracy, until after he was convicted at trial. The offenses here were serious, as shown in the victim statements, and in the defendants' efforts to conceal his conduct from law enforcement, especially the FDA, and the vast quantities of unlawful products distributed across the country.

Criminal cases involving unlawful dietary supplements require complex investigations and prosecutions, and criminals understand that FDA has limited resources to investigate dietary supplements. Boccuzzi literally left one company selling dangerous dietary supplements (USP Labs) to join Blackstone, and engaged in criminal acts for years. During the conspiracies, Boccuzzi disregarded and even scoffed at FDA's enforcement actions, while encouraging others to sell unlawful and unsafe products.

The need for a substantial sentence of incarceration is particularly important for deterrence in the dietary supplement industry. Holding defendants like Boccuzzi responsible for their conduct can have a real impact on future conduct within this insular business community.

In any event, Boccuzzi's current sentence would be within his reduced guideline range of 41-51 months, and he is likely to serve significantly less time than his sentence. Boccuzzi is currently anticipated to serve just 28 months in prison or a halfway house – barely half of the imposed sentence – and he is scheduled to be released in April 2024. Considering the factors in Section 3553(a), Boccuzzi's current sentence is appropriate and warranted.

## CONCLUSION

Based on the foregoing, the defendant should not be granted relief.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

AMANDA N. LISKAMM
DIRECTOR
U.S. DEPARTMENT OF JUSTICE
CONSUMER PROTECTION BRANCH

　　*/s/ Alistair Reader*

ALISTAIR F. A. READER
Court ID A5502377
Senior Trial Attorney
U.S. Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, D.C. 20044-0386
Alistair.F.Reader@usdoj.gov
(202) 353-9930

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 2, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/ Alistair Reader*
